IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM McGHEE,

      Plaintiff,

v.                                                          No. CIV 06-508 MV/LFG

DOCTOR BREEN OF
WEXFORD MEDICAL SOURCES,

      Defendant.

**MAGISTRATE JUDGE'S ANALYSIS
AND RECOMMENDED DISPOSITION**[1]

**Introduction**

This is a *pro se, in forma pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff William McGhee ("McGhee").  McGhee was incarcerated at Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico when he filed his complaint.  He presently is incarcerated at the State Penitentiary of New Mexico in Santa Fe, New Mexico.  His Civil Rights Complaint, filed June 13, 2006, alleges "experimentation; deliberate indifference; unnecessary and wanton infliction of pain; increased risk of injury; for sole purpose of trying to increase profits." [Doc. 1, p. 1.]  Defendant Breen, is a medical doctor employed by a contractor with the New Mexico

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

prison system and is the medical director of medical care for McGhee's prison facility at all pertinent times. [Doc. 32.]

Briefly, McGhee contends that he had been taking a blood pressure medication, Norvasc, for five years, with good results for his hypertension (high blood pressure). McGhee further argues that Defendant Doctor Breen of Wexford Medical Sources ("Defendant Breen or Dr. Breen") allowed his prescription to be changed to a different blood pressure medication on April 17, 2006, which caused McGhee to suffer discomfort and exposed him to unacceptable risks. In denying prescriptions for Norvasc, McGhee claims that Dr. Breen acted with deliberate indifference to his health and safety in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

It is undisputed that on August 3, 2006, McGhee was again placed on Norvasc and that he continues to take that medication to the present date. Thus, McGhee's claim of cruel and unusual treatment or deliberate indifference to serious medical needs in violation of his Eighth Amendment rights is limited to a period of April 17, 2006 until August 3, 2006.

## Procedural Background

The Court construed McGhee's "Memorandum of Law in Support of Motion for TRO and Preliminary Injunction" ("Motion for TRO") [Doc. 2], filed with his § 1983 complaint on June 13, 2006, to be a request for preliminary injunctive relief. On November 22, 2006, the Court entered an Order denying McGhee's Motion for TRO and issued an Order to Show Cause why Defendant was not entitled to summary judgment based on the material facts presented by Defendant in its response to the Motion for TRO [Doc. 22.] In other words, the Court concluded that McGhee had not satisfied the requisite elements to warrant preliminary injunctive relief [Doc. 22, pp. 4-20], and also found that Defendant had demonstrated the existence of no genuine issue of material fact with respect

to an alleged constitutional violation. [Id., p. 21.] The Court gave McGhee until December 11, 2006 to submit a response to Defendant's initial showing of entitlement to summary judgment and to show cause why the case should not be dismissed with prejudice. Defendant was permitted to file a reply.

During the interim, McGhee moved the Court for authorization to file an amended complaint [Doc. 23], which was denied [Doc. 27]. McGhee also requested an extension of time to file a response to the Order to Show Cause [Doc. 25], which the Court granted [Doc. 26]. McGhee's response was due by January 19, 2007. He actually filed the response on January 23, 2007. [Doc. 29.] Defendant filed its reply on February 13, 2007. [Doc. 32.]

McGhee repeatedly filed motions or requests for an extension of time asking that he be allowed to supplement his lengthy response to the Order to Show Cause or attempt to obtain additional materials to support his position. Those requests were denied. [Doc. Nos. 31, 35, 37, 40.] However, the Court clarified in one Order [Doc. 31] that it would consider the exhibits McGhee attached to his Response to the Order to Show Cause (McGhee argued that he had submitted these same exhibits earlier in the case but that they had not been docketed).

The Court notified both parties in the Order to Show Cause [Doc. 22] that this case could be decided on summary judgment based on Defendant's preliminary showing, unless McGhee rebutted that showing. In the Court's Order granting McGhee additional time to file a response to the Order to Show Cause, the Court again notified the parties that their submissions could be used in deciding whether to grant summary judgment and that the parties should submit whatever materials they considered relevant in making this determination. [Doc. 26.] "The general rule is that district courts are widely acknowledged to possess the power to enter summary judgments, *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence." Graham v. City

of Okla. City, 859 F.2d 142, 144 (10th Cir. 1988) (per curiam) (quotation omitted).  Here, there is

no question that both parties were provided with adequate notice that the case could be decided on

summary judgment and that all materials pertinent to this question should be submitted.[2]

   In making this recommendation, the Court reviewed McGhee's Complaint and Memorandum[3]

with exhibits [Doc. Nos. 1 and 2], McGhee's response to the Order to Show Cause with exhibits

[Doc. 29], and Defendant's Reply with exhibits [Doc. 32].   After careful consideration of the

pertinent law and pleadings, the Court recommends that summary judgment be granted in favor of

Defendant and that McGhee's civil rights complaint be dismissed, with prejudice.

## Summary Judgment Standard

   The Court may grant summary judgment, under Rule 56(c) of the Federal Rules of Civil

Procedure, if the pleadings, depositions, answers to interrogatories and admissions or affidavits, if

any, show there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.   The opposing party must be given notice and an opportunity to

respond, as provided in Rule 56.   Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

   Defendant Breen, having submitted a list of substantiated material facts in its earlier response

to McGhee's Motion for TRO is in the same position as a movant for summary judgment and

_____

   [2]After the Court denied McGhee's repeated, similar requests for additional extensions of time to
supplement his lengthy response to the Order to Show Cause, the Court advised McGhee that the materials he
submitted in these later motions (which sometimes continued to provide argument as to the merits) would not be
considered by the Court.  *See, e.g.,* Doc. Nos. 36, 37.  In several Orders, the Court clearly advised McGhee that
briefing on the summary judgment issue was complete and that no additional argument or supplementation would
be considered.  [Doc. 35, 40.]

   [3]The Court, however, does not re-visit the earlier ruling denying the Motion for TRO.  To the extent that
some of McGhee's attachments to the pertinent pleadings re-argue the Motion for TRO, those exhibits have no
bearing on this recommendation and were not considered.  *See, e.g.,* Doc. 29, Ex. A ("Order to Show Cause and
Temporary Restraining Order").

therefore, carries the burden of establishing that there is no genuine issue of material fact for trial.

Defendant may satisfy that burden by showing an absence of evidence to support McGhee's claims.

Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).  Once the movant meets its

burden, the burden shifts to McGhee to demonstrate a genuine issue for trial on a material matter.

Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The party opposing

the motion may not rest on pleadings, mere argument, or contention but must set forth specific facts

through admissible evidence, showing there is a genuine issue for trial as to those dispositive matters

for which he carries the burden of proof.  If he cannot make such a showing, summary judgment is

appropriate.  Celotex, 477 U.S. at 324.

 However, the Tenth Circuit explained in Reed v. Bennett that the nonmovant's burden to

respond arises only where the summary judgment motion is properly "supported."  Reed v. Bennett,

312 F.3d 1190, 1194 (10th Cir. 2002).

> Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the
> moving party has met its initial burden of production under Rule 56(c).  If the
> evidence produced in support of the summary judgment motion does not meet this
> burden, 'summary judgment must be denied, *even if no opposing evidentiary matter
> is presented.*'

Id. (emphasis in original) (internal citation omitted).  Thus, the Court must decide whether Defendant

met its initial burden of demonstrating that no material issues of fact remain for trial.  Id.

## Analysis

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

 In accordance with the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71,

as amended, 42 U.S.C. § 1997e *et seq.*, inmates must exhaust prison grievance procedures before

filing a lawsuit.  28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a).

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.  42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, __ U.S. __, 127 S.Ct. 910, 918-19 (2007) (internal citation omitted).

Prior to Jones, Tenth Circuit law required that the prisoner demonstrate exhaustion under the PLRA before his lawsuit could proceed.  Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003) (exhaustion is a pleading requirement that must be established by the inmate). However, in Jones, the United States Supreme Court held that the issue of exhaustion of administrative remedies is an affirmative defense.  Jones, 127 S.Ct. at 921.  In other words, an inmate is not required to specially plead or demonstrate exhaustion in his complaint.  Rather, the defendant must plead and prove failure to exhaust.

Here, McGhee alleged in his complaint that he exhausted administrative remedies and he also attached a number of grievances to the complaint.  [Doc. 1.]  Defendant's Answer neither admits nor denies McGhee's specific allegations of exhaustion but does assert as an affirmative defense that McGhee failed to exhaust his administrative remedies.  [Doc. 8.]  In the subsequent pleadings, however, Defendant did not come forward with any argument or evidence showing McGhee failed to exhaust his administrative remedies.  Instead, Defendant argued the merits of McGhee's claims in its response to the Order to Show Cause.  [Doc. 32.]  Based on the pleadings, the Court is unable to make a determination as to whether McGhee exhausted his administrative remedies.  Thus, the Court

concludes that, at a minimum, there are genuine issues of material fact regarding exhaustion of administrative remedies that would preclude a determination of summary judgment on that ground.

## II.      EIGHTH AMENDMENT CLAIM

### A.      Legal Standard:

Under certain conditions, denial or delay of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), *reh'g denied*, 429 U.S. 1066 (1977). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment [internal quotation marks omitted]." Id. at 106.

The "deliberate indifference" standard has two components, one objective and one subjective. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). In order to recover, a plaintiff must make a two-part showing: (1) that the medical need was "sufficiently serious," and (2) that the offending officials acted with a culpable state of mind, in that they knew or must have known about the serious medical need but intentionally refused to provide medical care. Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Deherrera v. Kropinak, 3 Fed. Appx 797, 2001 WL 81999 at *2 (10th Cir. N.M. Jan. 31, 2001) (*citing* Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000)).

An inmate may satisfy the objective component by showing that a sufficiently severe condition was diagnosed by a physician and required treatment. On at least one occasion, the Tenth Circuit has further commented that "[t]he objective component requires an 'extreme deprivation' denying a 'minimal civilized measure of life's necessities.'" Rashad v. Doughty, 4 Fed. Appx 558, 561, 2001 WL 68708 at *1 (10th Cir. Jan. 29, 2001) (*citing* Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

7

In addition, with respect to claims that medical treatment was delayed, the inmate must demonstrate that the delay resulted in "substantial harm." Sealock, 218 F.3d at 1210. "Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical losses." Gresham v. Flowers, 208 F.3d 226 (Table, Text in Westlaw), 2000 WL 192926 at *2 (10th Cir. Feb. 17, 2000) (internal citations and quotation marks omitted); Thompson v. Hamilton, 127 F.3d 1109 (Table, Text in Westlaw), No. 97-6084, 1997 WL 639320 at *1 (10th Cir. Oct. 14, 1997) ("Mr. Thompson's claim that he went untreated for 90 days, without a showing of harm, is insufficient.")

With respect to the subjective element, the inmate must allege facts supporting an inference that Defendants knew about and disregarded "a substantial risk of harm to his health or safety." Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001). Deliberate indifference may be demonstrated under circumstances when prison officials prevent an inmate from receiving treatment by medical personnel capable of evaluating the need for treatment. Id. at 1279 (internal citation omitted).

However, a mere delay in treatment, without more, does not amount to deliberate indifference. Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); White v. Colorado, 82 F.3d 364, 366-67 (10th Cir. 1996). "Although a delay in treatment is a relevant consideration, . . . , the ultimate finding of deliberate indifference necessarily requires findings that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that he drew that inference." Garrett v. Stratman, 254 F.3d 946, 950 n. 4 (10th Cir. 2001) (internal citation omitted).

8

With respect to claims that an inmate should have received a certain type of medical treatment, different than that prescribed by medical personnel, the Tenth Circuit has consistently held that "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual treatment." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied*, 450 U.S. 104 (1981); Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993) (difference of opinion with medical staff cannot alone give rise to a cause of action for a civil rights violation); Olson, 9 F.3d at 1477 (difference of opinion with medical judgment of prison doctor does not support a claim of cruel and unusual punishment); James v. Fed. Bureau of Prisons, 79 Fed. Appx. 417, 419 (10th Cir. Oct. 28, 2003) (inmate's dislike or disapproval of a certain medical treatment does not constitute deliberate indifference); Hacker v. Wackenhut Correctional Facility, 95 Fed. Appx. 293, 295 (10th Cir. Apr. 19, 2004) ("matter[s] for medical judgment' do not give rise to an Eighth Amendment violation").

As was true of the plaintiff in Ledoux v. Davies, 961 F.2d 1536, 1537 (10th Cir. 1992), McGhee's "belief that he needed additional medication, other than that prescribed by the treating physician . . . [is] insufficient to establish a constitutional violation." Clearly, an inmate does not state a constitutional violation when he disagrees with the medical treatment or diagnosis. Estelle, 429 U.S. at 107; Oxendine, 241 F.3d at 1277 n.7; Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care, but not to the type or scope of medical care the inmate personally desires).

**B.**    **Undisputed Material Facts:**

The following facts are taken from McGhee's sworn pleadings [Doc. Nos. 1, 2, 29][4] and from Dr. Breen's affidavit, attached to the response to the motion for TRO, and the corrected affidavit. [Doc. 13, Ex. A; Doc. 16.]

Dr. Breen is a medical doctor licensed to practice medicine in New Mexico. He is employed by Wexford Health Sources, Inc. and is its Medical Director for the State of New Mexico. Dr. Breen examined McGhee's medical records. Other medical personnel at the correctional facility examined McGhee during the pertinent time periods and prescribed various medications for him.

McGhee has hypertension and according to his complaint, had been taking Norvasc in combination with Calanadine for high blood pressure for a period of five years. He claimed his hypertension was well controlled with these medications.

On about October 15, 2006 (later corrected to October 15, 2005), a nurse gave McGhee a new medication, Procardia, in place of the Norvasc, without informing him of the change.[5] McGhee took the Procardia which he states "almost caused me to have a seizure." McGhee acknowledges that he stopped taking the Procardia for at least three days and held onto the pills. In other exhibits, McGhee states he had to "fight off a seizure" at this time. There is no confirmation that McGhee had a seizure. It appears that McGhee was again given Norvasc until mid-April 2006.

---

[4]While McGhee includes verification in his pleadings that all of his allegations are true and correct, he does not supply any affidavit testimony, medical expert testimony or any other type of documentary confirmation of the allegations he presents. Still, the Court considered the allegations he makes in resolving summary judgment.

[5]McGhee briefly discusses a change of medication in October 2005. However, in his Declaration in Support of Motion for TRO and Preliminary Injunction (Ex. B), attached to his Response to the Order to Show Cause [Doc. 29], he states that "the first interruption [to his treatment with Norvasc] occurred on April 17, 2006." [Doc. 29, Ex. B, ¶ 3.]

McGhee states that on April 17, 2006, medical personnel stopped giving him Norvasc and changed his medication to Procardia. McGhee refused Procardia because "no one talked to [him] about it," it looked like a drug he had taken years ago to which he had an adverse reaction, and medical personnel refused to inform him of the possible side effects of the new medication. However, McGhee requested and obtained a list of side effects. It appears, based on McGhee's statements, that he took Procardia for one day on April 23, the date when he received notice of the side effects. McGhee then stopped taking Procardia.

After taking the new medication for one day, McGhee started having headaches, nausea, stomach pains, dizziness and anxiety lasting all day. As of April 27, 2007, McGhee had not taken the medication for three days. He disagrees that his blood pressure, taken on April 27, 2007, was normal. McGhee believes that Norvasc was no longer given to him because it was a more expensive medication than that which replaced it. McGhee resumed taking Procardia against his wishes.

McGhee believed that if he took Procardia he risked the possibility of a stroke or death. Because he felt so ill when taking Procardia, McGhee stopped the medication on May 5, 2006. On May 15, 2006, he began having serious chest pains and was taken to the infirmary. In some exhibits, McGhee asserts that he had a "mild heart attack" on May 15, 2006; in other exhibits, he does not mention suffering a "mild heart attack" that day and merely states he was examined by Dr. Ruiz, who placed him on Norvasc again. On about May 15, 2006, McGhee's blood pressure was 160/110 on the left arm and 150/116 on the right arm. There is no medical confirmation that McGhee suffered a heart attack.

Dr. Ruiz wanted to place McGhee on Cardizem because the doctor believed it was more effective. McGhee again asserts that while no one was saying it, the only reason he was taken off

Norvasc was because it was a more expensive drug and Wexford wanted to increase its profits. McGhee offers no evidentiary support for this supposition. McGhee refused to take Cardizem.

On May 16, 2006, McGhee was given Norvasc for a few days but was also allegedly told that Wexford did not want to pay for that medication. McGhee believes he was given Norvasc for a few days in late May only so that the facility would pass an audit that was taking place. McGhee went without any blood pressure medication for about six days in late May 2006. On May 30, 2006, McGhee was given Cardizem but he refused to take it because no one had explained the side effects to him. McGhee's blood pressure was 148/100, and he was having chest pains. McGhee claims that while taking Norvasc, his blood pressure was generally 120/80.

McGhee filed a number of grievances, complaints or appeals during this time concerning the medications given to him and side effects or problems.

On May 31, 2006, McGhee was given Cardizem but again refused to take it without seeing the possible side effects first. On June 1, 2006, McGhee was given a description of the side effects related to Cardizem. One possible side effect, "acute renal failure," was of great concern to him due to a family history of renal failure or problems. McGhee decided not to take the Cardizem. While medical staff continued to give Cardizem to McGhee, he refused it. McGhee was told that renal failure is a possible side effect of all three medications used to treat hypertension. While McGhee is not a medical professional, he disputes this.

McGhee was taken off all blood pressure medication for a short period of time since he had refused to take what was prescribed. Eventually, he was so sick that he felt forced to take the medication offered. In June 2006, McGhee claimed he had life threatening episodes during which he believed he would have a stroke, heart attack or die. On about June 8, 2006, he stated his blood

pressure was 154/98.  On about June 13, 2006, his blood pressure was 220/130.  He was given a nitroglycerin pill.  His blood pressure lowered to 170/110.  On June 15, 2006, McGhee's blood pressure was 160/98; on June 17, it was 150/104; on June 20, it was 157/113; shortly thereafter, it was 150/130.  As of June 22, 2006, McGhee felt his heart was beating rapidly and he feared a heart attack.

McGhee explains that he may initially have asserted Dr. Breen changed his prescription to different medications on three occasions.  However, he really intended to allege that other medical personnel working under Dr. Breen ordered Norvasc for McGhee and that Dr. Breen "interrupted" that prescription by denying approval for the more expensive medication.

Dr. Breen's corrected affidavits notes that McGhee was given Norvasc again on August 3, 2006 and presently takes that medication.  Because he did not receive Norvasc until August 3, 2006 (80 days after Dr. Ruiz ordered that medication), McGhee alleges that Dr. Breen acted with deliberate indifference to McGhee's medical needs.  McGhee also argues that he was not referred to an outside cardiologist until after he filed this lawsuit.

In addition, McGhee claims he was never seen by Dr. Breen and that Dr. Breen had no right to adjust or change McGhee's medication, or to deny prescriptions for Norvasc ordered by other medical personnel in the prison system who examined McGhee.  He alleges that years ago, Dr. Penn had prescribed Procardia for him but stopped the medication immediately because of McGhee's adverse reactions to it.  There is no confirmation of this assertion.

It is undisputed that hypertension is a medical condition amenable to treatment with medications known as calcium blockers.  Some of the calcium channel blockers known to be effective in treating hypertension include Norvasc (amlodipine besylate), Procardia (nifidepine) and Cardizem

13

(diltiazem hydrocholoride).  Absent contraindications, any of these three medications are acceptable medicines for the treatment of hypertension like that of McGhee.

The main contraindication for Norvasc is an allergy to amlodipine, and the main contraindication for Procardia is an allergy to nifidepine.  The main contraindications for Cardizem are those suffering from sick sinus syndrome except in the presence of a functioning ventricular pacemaker, patients with second or third degree AV block except in the presence of a functioning ventricular pacemaker, patients with hypotension, patients with hypersensitivity to the drug and patients with acute myocardial infarction and pulmonary congestion documented by x-ray.  The medically recognized possible side-effects for all three medications are similar.

Mr. McGhee's medical records do not document any contraindications to his taking any of these three medications.  Absent a serious medical reaction to the medication, it is acceptable medical practice for a doctor to prescribe a patient with McGhee's medical condition, Procardia, Cardizem or Norvasc.

Norvasc is not a medication that was in the pharmacy formulary at the CNMCF.  McGhee argues that it matters not whether Norvasc is on the pharmacy formulary at CNMCF because no prison facility has that medication on its formulary and moreover, the facility or pharmacy still does and can order non-formulary medications.  According to McGhee, the only reason Breen denied prescriptions for Norvasc was to reduce costs to Wexford by using less expensive medications.

As described above in McGhee's pleadings, it is undisputed that a prison facility medical provider prescribed Procardia to treat McGhee's hypertension and that McGhee refused on several occasions to take the medication.  Following several refusals to take Procardia, McGhee was

14

prescribed Cardizem for his hypertension.  However, he again refused on several occasions to take that medication as well.

On August 3, 2006, McGhee's Cardizem prescription was replaced with a prescription for Norvasc which he takes to date.  According to Dr. Breen's review of the medical records, McGhee did not suffer any medically objective discernable harm while taking Procardia or Cardizem.  Nor is there any medical indication that McGhee had developed a tolerance or intolerance to these two medications.  Moreover, there is no medical indication that McGhee is allergic or hypersensitive to Procardia or Cardizem.

Dr. Breen's review of the medical records indicates that McGhee first reported experiencing side-effects from Procardia and Cardizem after he received a list of the medically recognized side effects of these medications.  Dr. Breen attests that it would be medically inappropriate to foreclose the use of Procardia or Cardizem to treat McGhee's hypertension, and that it would be medically inappropriate to mandate that only Norvasc be prescribed for him.

McGhee vehemently denies that the issues presented by his complaint consist solely of a disagreement between McGhee and medical providers regarding appropriate medical treatment for his medical condition.  "This dispute is not over the adequacy of treatment."  [Doc. 29, p. 13.] Instead, McGhee insists that his civil rights have been violated because Dr. Breen or Wexford "interrupt[ed] [his] prescribed order for treatment by other doctors for the sole purpose of increasing profits."  McGhee's "health is the main issue and it outweighs the prison's considerations in saving money."  [Id., p. 14.]

C.    **Discussion**

First, in McGhee's "prayer for relief" [Doc. 1], he seeks an Order directing Defendant to place him back on Norvasc.  Defendant already prescribed Norvasc for McGhee as of August 3, 2006. McGhee apparently continues to take Norvasc, although the Court recognizes Defendant's right to make appropriate medical decisions in McGhee's care, which could include the future use of different medications and treatments for hypertension.

McGhee also seeks a declaratory judgment to prevent Defendants from placing him on medications other than Norvasc in the future.[6]  McGhee has not shown that he has a constitutional right to a prescription for Norvasc to treat his hypertension.  There is no legal authority that would allow the Court to override McGhee's physicians' expertise in determining the proper course of treatment for McGhee's medical condition.  Moreover no legal basis exists for the Court to order McGhee's physicians to limit medical treatment to the drug McGhee, a lay person,[7] believes is more effective.

> Indeed, prison officials and medical officers have wide discretion in treating prisoners, and § 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons.  Federal courts are generally hesitant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

Sonds v. St. Barnabas Hosp. Correctional Health Service, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001)

---

[6]McGhee asserts that he did not ask for treatment by Norvasc only.  Instead, he asks that defendant be stopped from denying him Norvasc.  [Doc. 29, p. 3.]  Under the circumstances of this case, where McGhee wants to be treated with Norvasc, rather than other similar medications, it seems to be a difference without a distinction.

[7]While McGhee may be able to testify how he feels when taking certain medications, there is no evidence that he is "qualified to testify as to his medical condition."  See Martinez v. Parke, et al., 1996 WL 137860 at *4 (N.D. Ind. Mar. 11, 1996).  Like the plaintiff in Martinez, McGhee "presented no competent evidence by medical or scientific experts as to the effect or advisability of the changes in his medication."  Id. (internal citation omitted).

(citations omitted).[8]

Third, McGhee seeks compensatory and punitive damages for an alleged violation of his Eighth Amendment right to be free from cruel and unusual punishment.  In support of his claim, McGhee asserts that Dr. Breen acted with deliberate indifference in removing Norvasc when it had been a successful treatment for McGhee, and by placing him on a different medication that "they knew or should have known" would not work for him.  McGhee argues that such actions constitute a "wanton and malicious attempt to increase the profits of Wexford."  As noted before, the period during which McGhee was without Norvasc began on about April 17, 2006 and lasted until approximately August 3, 2006.[9]

With respect to the Eighth Amendment claim, McGhee has not demonstrated such "indifference" by Defendant that would "offend evolving standards of decency . . . ."  Estelle, 429 U.S. at 106.  While McGhee's hypertension might be considered "sufficiently serious" to meet the first of two components of the deliberate indifference standard, he fails to show that the "offending officials acted with a culpable state of mind, in that they knew or must have known about the serious medical need but intentionally refused to provide medical care."  See Farmer, 511 U.S. at 834.

Here, it is undisputed that medical providers, with medical expertise, attempted to treat McGhee's hypertension with several acceptable medications.  It is uncontested that on various occasions, McGhee refused to take those medications.  This is not a case where Defendant refused to treat McGhee's condition or even delayed in treating it.  Rather, McGhee placed his own medical

---

[8]Decisions outside the Tenth Circuit are not binding on this Court.  However, the Court finds the analysis in Sonds on this matter to be instructive.

[9]There were several days during May 2006, when McGhee received Norvasc.

condition in jeopardy by refusing medication on more than one occasion, to the point where he felt

so badly that he felt "forced" to take the prescribed medication.

While there may have been a short period of time in late May 2006 when McGhee was not

given any medication for his hypertension (after he had refused what was prescribed to him),[10] he did

not demonstrate that the "delay" in treatment resulted in "substantial harm." *See* Sealock v. Colo.,

218 F.3d 1204, 1210 (10th Cir. 2000). "Delays that courts have found to violate the Eighth

Amendment have frequently involved life-threatening situations and instances in which it is apparent

that delay would exacerbate the prisoner's medical losses." Gresham, 208 F.3d 226, 2000 WL

192926 at *2 (internal citations omitted). McGhee's allegations that he suffered a "mild heart

attack," along with his fears of suffering a stroke or heart attack do not demonstrate he actually

suffered "substantial harm." Rather, his allegations of injury are speculative at best and

unsubstantiated. His complaints of high blood pressure, pain, and discomfort do not amount to

"substantial harm," nor do they describe a "life-threatening situation" under these circumstances.

In addition, McGhee fails to demonstrate, with admissible evidence, that Defendant knew

about and disregarded "a substantial risk of harm to his health and safety." Oxendine, 241 F.3d at

1276-77. Medical personnel did not prevent McGhee from receiving medication for his hypertension.

Instead, McGhee refused to take what trained medical experts prescribed. Defendant did not

disregard "a substantial risk of harm" to McGhee's health and safety under circumstances where

Defendant prescribed medications like Procardia and Cardizem, that are typically used to treat

hypertension and where there was no documented medical evidence showing contraindications to

_____

[10]It is unclear whether prison officials actually refused to provide medication to McGhee for a few days or
whether they simply did not give him what he already had refused to take.

McGhee's taking these medications.  McGhee's claim is based on bare speculation that Procardia or Cardizem must not have been as good for him as Norvasc because he did not feel as good as he did when taking Norvasc.  McGhee's lay argument, opinions and unsupported conclusions do not amount to competent evidence sufficient to rebut Defendant's showing of entitlement to summary judgment.  *See* Celotex, 477 U.S. at 324 (party opposing summary judgment "may not rest on pleadings, mere argument, or contention but must set forth specific facts through admissible evidence, showing there is a genuine issue for trial").

Notwithstanding McGhee's numerous efforts to say that his Eighth Amendment claim does not amount to a disagreement between him and medical personnel about medications and treatment, the Court finds otherwise.  Narrowed to its essence, McGhee's claim is that his hypertension must be treated with Norvasc because <u>he</u> believes it is the most effective medication.  He further asserts that it is illegal for Dr. Breen to deny him treatment with Norvasc, particularly when other prison doctors have prescribed it and when Dr. Breen allegedly denies approval for Norvasc solely because it is a more expensive medication.

Regardless of whether McGhee finds Norvasc to be more effective in treating his hypertension, he is not entitled, nor does he have the medical expertise, to dictate the medications he receives, particularly when other medications are similarly effective in managing hypertension.  McGhee's trained medical providers were of the opinion, at least during May until August 2006, that Procardia and Cardizem could also control McGhee's condition.  McGhee is of the opinion that those medications either do not control his condition or cause risk of harm or injury to him.  Dr. Breen attests that the medications all have similar side-effects and that there are no contraindications as to

any of these drugs for McGhee.   Thus, this is a "difference of opinion" case, notwithstanding McGhee's attempt to cast it in other terms.

Tenth Circuit precedent is clear on this point.   "[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual treatment."   Ramos, 639 F.2d at 575.   *See* cases listed *supra* at p. 9.   Thus, McGhee's claims that Dr. Breen's failure to prescribe Norvasc for him from April 17, 2006 until August 3, 2006 do not support a claim of cruel and unusual treatment violative of the Eighth Amendment.

Moreover, even if it is true that Defendant attempted to change McGhee to a less expensive medication for his hypertension, solely for financial gain, it matters not under these circumstances. The medications that were prescribed are frequently used to treat hypertension, and there were no contraindications for their use.   In Brightwell v. Lehman, 2006 WL 931702 at * 8 (W.D. Pa. Apr. 10, 2006),[11] an inmate made a similar unsuccessful argument.   "Even assuming that Plaintiff [Brightwell] is correct that he was given a generic substitute, disagreement over which drugs to administer simply does not demonstrate the deliberate indifference necessary to state an Eighth Amendment claim." (internal citation omitted).   The Court, in Brightwell, further noted that "[t]his is true even if part of the motivation in providing [the inmate] a generic drug was cost containment . . . ."   Id.   In addition, the fact that "cost" is a factor in determining what medical prescriptions and treatments are provided is true on the "outside" as well as within correctional facilities.   Id.   "Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate

---

[11]Again, the Court cites this unpublished, non-binding opinion for its instructive value only.

indifference even if a prisoner does not receive the most costly treatments or his treatment of choice."

Id.

## **Recommended Disposition**

In sum, McGhee fails to raise a genuine issue of material fact with respect to the issue of alleged deliberate indifference to a serious medical need.  In addition, McGhee did not present a genuine issue for trial with respect to alleged substantial harm he suffered.  Thus, the Court recommends that all of his claims, including the Eighth Amendment claims, and his complaint be dismissed, with prejudice.

Lorenzo F. Garcia
Chief United States Magistrate Judge